# IN THE UNITED STATES DISTRCIT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

VINCE NICOLAS VAN VLECK, individually,
VINCE NICOLAS VAN VLECK, in a
representative capacity on behalf of
similarly situated persons,

**Case No. 20-cv-11635**

      Plaintiff,

    v.

LEIKIN, INGBER & WINTERS, P.C.,
d/b/a INGBER & WINTERS, P.C.,

      Defendant.

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.    Plaintiff, Vince Nicolas Van Vleck, is an immune compromised individual, whom after Governor Whitmer's March 23, 2020 "Stay Home, Stay Safe" Executive Order, Executive Order No. 2020-21 (COVID-19), Defendant Leikin, Ingber & Winters, P.C., caused, and on information and belief directed, to have Plaintiff personally served with a state court complaint and summons, (Exhibit A), notably a collection lawsuit exclusively based on medical debts.

2.    Plaintiff's individual claim asserts that the in-person service by a process server was not only an act prohibited under the "Stay Home, Stay Safe" Executive Order, which in part directed all non-critical businesses to temporarily

close, notably requiring "[i]n-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume", but that it was a willful violation of that Executive Order which is a misdemeanor, and that same prohibited conduct also violated the Fair Debt Collection Practices Act.

3.     Plaintiff individually, and Plaintiff in a representative capacity on behalf of a class of similarly situated persons, alleges that the summons stating that a responsive pleading to the state court complaint must be filed within 21-days of the in person service, 28-days if served by mail, was false and deprived him and the class members of additional time, being able to exercise their right of delay provided under Michigan Supreme Court Administrate Order No. 2020-3 and Executive Order No. 2020-58 (COVID-19), from responding to the complaint, expediting the case and having the potential of having a judgment entered against them and being garnished.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k (FDCPA).

5.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the mirror MRCPA claims as the conduct complained of arises out of a common nucleus of operative facts.

6.     Venue and personal jurisdiction over Defendant in this District is proper because Defendant operates its business from Southfield, Michigan, which is located in Oakland County, Michigan.

## PARTIES

7.     Plaintiff is a natural person who resides in Ionia County, Michigan.

8.     Defendant Leikin, Ingber & Winters, P.C. is a domestic professional corporation operating as a law firm and is located at 3000 Town Center, Suite 2390, Southfield, MI 48075-1387.  Its registered agent is Paul Ingber and his address is 3000 Town Center Suite 2390, Southfield, MI 48075-1387.

9.     Defendant Leikin, Ingber & Winters, P.C. is engaged in the collection of medical debts in volume.  *E.g. Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011); *e.g. Sebestyen v. Leikin, Ingber & Winters, P.C.*, 2015 U.S. Dist. LEXIS 39101 (E.D. Mich. Mar. 27, 2015) *rev'd and remanded* 646 Fed. Appx. 444 (6th Cir. 2016) (unpublished).

10.     Defendant Leikin, Ingber & Winters, P.C. is a "debt collector" whom engages in the collection of "debt" as those terms are defined under the FDCPA.

11.     Defendant is a "regulated person" subject to the Michigan Regulation of Collection Practices Act.  Mich. Comp. Laws § 445.251(g); *see Carpenter v. Monroe Fin. Recovery Grp., LLC,* 119 F. Supp. 3d 623, 630 (E.D. Mich. 2015); *see also Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 966-67 (E.D. Mich. 2012).

**FACTS**

12.　　On October 10, 2019, Defendant sent Plaintiff a form collection letter dated October 10, 2019, which states in part that, "[t]his account has been listed with our office for collection" and listed a health care provider as the creditor and a "$1,567.33" amount without explanation.

13.　　Plaintiff sent Defendant a letter dated November 11, 2019, stating in part, "I need more details about what you claim I owe so that I can make an informed decision" and in part requested, "[d]etails about the age and amount of the debt including a copy of the last billing statement. . . ."

14.　　In a letter dated November 27, 2019, Defendant responded, "[p]ursant to your request I have enclosed a copy of the itemization(s) in connection with the above captioned claim. This communication is from a debt collector."

15.　　Attached to the letter dated November 27, 2019 from Defendant, were 7 different itemizations for medical services and medication which state Plaintiff's name only and included descriptions for example, "EMERGENCY DEPARTMENT VISIT HIGH/URGENT SEVERITY".

16.　　In a state court complaint dated January 14, 2020, Defendant filed suit in the State of Michigan, 64A District Court, the complaint alleged in part, "[the medical provider], at the express of implied request of Defendant(s) sold and delivered certain reasonable necessary medical and/or dental and/or psychology

merchandise and/or services to or for the Defendant, and/or his/her minor child(ren), for the dates of service identified on the attached invoice(s) or Invoice File to this complaint." (Exhibit A).

17.     The state court complaint dated January 14, 2020, stated in part, "Defendant(s) is indebted to Plaintiff, on open account, a copy being attached, in the principal amount of $1,567.33"

18.      The summons, in part states:

> **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).

> (Exhibit A)(emphasis original).

19.     The summons, in part states, "[i]f you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint." (Exhibit A).

20.     The summons was issued by the state court's clerk on January 29, 2020.

21.     On information and belief Defendant contracted for, and on information and belief directed, Plaintiff to be personally served with the summons and complaint in the state court matter.

22.     On March 18, 2020, the Detroit Free Press published an article "First Mich. death due to coronavirus is Southgate man in his 50s", "[t]he man had other underlying health conditions", "'[w]e're trying to heed the warnings on proper social

distancing and the like. That's how we're going to make this work'" and "COVID-19 is in our community. It's with us." *Available at* https://www.freep.com/story/news/local/michigan/wayne/2020/03/18/coronavirus-deaths-michigan/5054788002/ (accessed June 17, 2020).

23.     "On March 23, 2020, Governor Whitmer issued what has become known as the 'Stay-at-Home Order.' The Stay-at-Home Order, subject to very limited exceptions, required 'all individuals currently living within the State of Michigan ... to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household [were also] prohibited.' The Stay-at-Home Order further prohibited all persons and entities from 'operat[ing] a business or conduct[ing] operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.' It also required all persons to remain at least six feet apart." *SawariMedia LLC v. Whitmer*, No. 20-cv-11246, 2020 U.S. Dist. LEXIS 102237 *9 - 10 (E.D. Mich. June 11, 2020).

24.     On March 23, 2020 the Michigan Supreme Court Administrate Order No. 2020-3, provided in part:

> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in a civil and probate matters during the state of emergency declared by the Governor related to COVID-19.

Michigan Supreme Court Administrate Order No. 2020-3.

25.     Governor Witmer's Executive Order 2020-21 (COVID-19), Temporary requirement to suspend activities that are not necessary to sustain or protect life, effective March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm states in part, "[t]his order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life" and "[c]onsistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."

26.     April 9, 2020 Executive Order 2020-42 (COVID-19) which took effect April 9, 2020 at 11:59 pm and continued through April 30, 2020 at 11:59 pm stated in part, "[t]he novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death".

27.     The April 9, 2020 Executive Order 2020-42 (COVID-19) does not carve out the job of a process server of a civil summons from the mandatory stay at home requirements in paragraph 7, nor is the job related to a "critical infrastructure" or to "sustain or protect life", and the Order further states, "all in-person government activities at whatever level (state, county, or local) that are not necessary to sustain or protect life, or to support those businesses and operations that are necessary to sustain or protect life, are suspended" and "and "[c]onsistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."

28.     On April 20, 2020, WoodTV8 published the article on its webpage, "Whitmer says fight continues as COVID-19 cases, deaths start to decline", in which the article stated in part, "In West Michigan, two more people died in Ottawa County, bringing the total there to seven. 119 cases have been confirmed there. One more person died in Muskegon County, also a total of seven. Muskegon County has 149 confirmed cases. Kent County now has 550 confirmed cases and 24 deaths", "Michigan has confirmed 32,000 cases of coronavirus; 576 more than the day previous. That's the lowest one-day increase in confirmed cases since March 26", and "State officials say strict social distancing measures aimed at slowing the spread of the virus are working, with the number of new cases and deaths daily starting to fall."     *Available at*   [https://www.woodtv.com/health/coronavirus/april-20-2020-michigan-coronavirus-cases/](https://www.woodtv.com/health/coronavirus/april-20-2020-michigan-coronavirus-cases/)   (accessed June 17, 2020).

29.     On April 22, 2020 at 8:45 pm. Governor Whitmer signed Executive Order 2020-58 (COVID-19), which was effective immediately, and in which ordered in part:

> Consistent with the Michigan Supreme Court Administrative Order No. 2020-3, all deadlines applicable to the commencement and all civil and probate actions and proceedings, including but not limited to any deadline for the filing of an initial pleading and any statutory notice provision other prerequisite related to the deadline for filing of such a pleading, are suspended as of March 10, 2020 and shall be tolled until the end of the declared states of disaster and emergency.

30.     On or around April 23, 2020, Plaintiff was personally served with the state court summons and complaint.

31.     On the date Plaintiff was served, Plaintiff first observed an unknown man in a truck for several minutes before exiting the truck and walking towards the residence's back door.

32.     Plaintiff informed his mother, whom he lives with, of his observation, and when the unknown man knocked, he requested his mother to answer the door given his immune compromised status and his fear of the possibility of contracting COVID-19 from the unknown man.

33.     At the time Plaintiff was served, it was believed that persons could be asymptomatic carries of COVID-19 and could spread the virus.

34.     Plaintiff's mother answered the door, spoke with the unknown man, and returned to Plaintiff stating that there is a guy with a badge asking for you and she was not sure why.

35.     Plaintiff had faithfully followed the "Stay Home, Stay Safe" Executive Order leaving home only for his medical appointments and to pick up food (while he wore gloves and masks when he went in) and left his face mask in the car from his last outing and was scared to go to the door.

36. Plaintiff believing that it was his duty as a citizen to follow a request from a person with a badge, believing the unknown man to be law enforcement, reluctantly went to the door.

37. When Plaintiff went to the door, Plaintiff saw the unknown man wearing what looked like an official police office badge on a chain and that he was holding a clipboard.

38. Plaintiff opened the door, the unknown man showed Plaintiff his badge, and then handed Plaintiff the paperwork from his clipboard, which was the state court summons and complaint, a copy is attached as (Exhibit A).

39. Plaintiff took the papers, a copy is attached as (Exhibit A), was shaking and distressed of being put at risk of contracting COVID-19 and the effect it might have on Plaintiff being an immune compromised individual and the possibility of also spreading COVID-19 to his parents who are likewise in a high-risk group.

40. Plaintiff does not recall whether the unidentified man wore a face mask or wore gloves, but Plaintiff's mother is certain that the unidentified man was not wearing a face mask.

41. When Plaintiff was served, he was aware that he was in a high-risk group to the effects of COVID-19, including death.

42. Plaintiff's life is worth more than a $1,500 debt.

43.     When Plaintiff was served, he was aware that given the age of the process server, that the process server was at a high-risk group to the effects of COVID-19, and as such could be a spreader.

44.     On April 29, 2020 The Michigan Court of Claims in refusing to halt Governor Whitmer's "Stay Home, Stay Safe" Executive Order stated, in part, that the Executive Order was "consistent with the law", that "the challenged executive orders were issued to address the public health crisis occasioned by the world-wide spread of the novel coronavirus, which hit our great state in early March", that, "our fellow residents – have an interest to remain unharmed by a highly communicable and deadly virus, and since the state entered the Union in 1837, it has had the broad power to act for the public health of the entire state when faced with a public crisis", and "it was common knowledge that the virus had already rapidly spread throughout the state of Washington, was prevalent in several other states, and was devastating parts of Italy, China, and other countries. Indeed, the speed at which the virus spread was well known at the time the stay-at-home provision was implemented." *Martinko v. Whitmer et. al.*, Case No. 20-00062-MM, Opinion and Order Regarding Plaintiffs' April 23, 2020 Motion for a Preliminary Injunction (Mich. Ct. of Claims, Apr. 29, 2020).

45.     The Centers for Disease Control and Prevention published an online report "Evidence Supporting Transmission of Severe Acute Respiratory Syndrome

CoronaVirus 2 [COVID-19] While Presymptomatic or Asymptomatic" in which it was stated in part, "transmission while asymptomatic reinforces the value of community interventions to slow the transmission of COVID-19. Knowing that asymptomatic transmission was a possibility, CDC recommended key interventions including physical distancing, use of cloth face coverings in public, and universal masking in healthcare facilities to prevent SARS-CoV-2 transmission by asymptomatic and symptomatic persons with SARS-CoV-2 infection." *Available at https://wwwnc.cdc.gov/eid/article/26/7/20-1595_article* (internal footnotes omitted) (Accessed June 17, 2020).

46.     For the next seventeen days after Plaintiff was personally served with the state court summons and complaint, Plaintiff would occasionally break down in tears, worried and fearful about the possibility that he could have contracted COVID-19 from the unknown man who served the state court summons and complaint on him, and worried that if he contracted COVID-19 that his parents, whom he lives with and are in a high risk category given their age, would likewise contract COVID-19.

47.     Plaintiff was so emotionally distressed about coming into close proximity with the unknown man who served him with the state court summons and complaint, that he contacted his primary care physician, spoke with his doctor briefly and multiple times with nurse Tonya.

48.     On the seventeenth day after Plaintiff was personally served, Plaintiff was able to obtain a test for COVID-19 and the results, which showed negative, only partially eased his fear and anxiety, as he knew that there was a percentage of false negative tests.

49.     Plaintiff attempted to resolve the state court lawsuit by placing phone calls to: (1) the health care provider's billing department, which indicated a discrepancy in the amount stated in the state court lawsuit compared with their records; (2) Tonya at Plaintiff's primary care physician's office; and (3) called Defendant's office after not being able to speak with any of the attorneys at Defendant's place of business to resolve the case with a one-time payment, money he would have to had barrow from his father, Plaintiff within 21-days of being personally served, sent a response to the complaint dated May 6, 2020, via US Mail only to the Court.

50.     Given that Plaintiff was personally served on or around April 23, 2020, May 11, 2020, was the date under the 21-day time period in the summons Plaintiff was to file an answer or otherwise plead.

51.     Plaintiff believed that he had to answer the state court complaint within 21 days after being personally served and his father who assisted him in drafting the response also believed that Plaintiff had 21 days after being personally served to answer the state court complaint.

52.     On May 14, 2020, the state court issued an Order to Appear setting a June 24, 2020 date.

53.     After receipt of the Order to Appear, Plaintiff hired an attorney, Mr. Golden, to defend the state court lawsuit so that he need not appear in the state court on June 24, 2020, to reduce the risk of a potential exposure to COVID-19.

54.     Under the current applicable Orders, the 21 or 28-day clock for when a defendant must answer or otherwise plead in response to a complaint filed in State of Michigan Court does not start to run until June 20, 2020.  Administrative Order No. 2020-18 (June 12, 2020).

55.     On information and belief many of Defendant's competitors were not having complaints served upon debtors during the time period Governor Whitmer's "Stay Home, Stay Safe" Executive Order, and as extended, were in place.

56.     Defendant's conduct, on information and belief, was done with the purpose to deprive Plaintiff and the putative class members of their right of delay, in order to prompt a response from the recipient in regard to the debt.

## COUNT I
## INDIVIDUAL CLAIM

57.     Plaintiff incorporates paragraphs 1-56 herein.

58.     Plaintiff individually brings Count I against Defendant.

59.     Defendant is liable for the acts and omissions of its agent, the unknown man who personally served Plaintiff with the state court summons and complaint.

60.　　The personal service of a state court summons and complaint in a debt collection matter is not an act necessary to sustain or protect life or to conduct minimum basic operations under any of Governor Whitmer's COVID-19 related Executive Orders.

61.　　Defendant, at the time Plaintiff was personally served with the state court summons and complaint, was under a legal duty to ensure that service of the state court complaint and summons upon Plaintiff was not done in person.

62.　　Defendant violated that legal duty.

63.　　The personal service of the state court summons and complaint on Plaintiff was intentional.

64.　　The violation of the "Stay Home, Stay Safe" Executive Order by personally serving Plaintiff with the state court summons and complaint was willful conduct.

65.　　Personally serving Plaintiff with the state court summons and complaint, at the time it was served, was akin to an abuse of process.

66.　　Personally serving Plaintiff with the state court summons and complaint, at the time it was served, was akin to a common law battery, because such in-person service was prohibited under the "Stay Home, Stay Safe" Executive Order and was coercive, being done under the perceived color of the law.

67.    The "Stay Home, Stay Safe" Executive Order was a prophylactic emergency Order to combat the spread of the COVID-19 pandemic within the State of Michigan as Governor Whitmer determined that if left unchecked, COVID-19 was an certain impending biological threat to each and every resident in the State of Michigan that would cause injury.

68.    Personally serving Plaintiff with the state court summons and complaint in light of the purpose of the "Stay Home, Stay Safe" Executive Order was extreme and outrageous conduct.

69.    There is no justifiable reason for Plaintiff to have been personally served with the state court summons and complaint at the time he was served with the state court summons and complaint.

70.    Defendant knew or should have known that in light of the COVID-19 pandemic, the "Stay Home, Stay Safe" Executive Order, and that its client provided it documents that indicated Plaintiff had a history of Emergency Room visits, that in some cases were noted as "HIGH/URGENT SEVERITY", that given these circumstances, that in-person service at Plaintiff's residence amounted to a place inconvenient to serve Plaintiff at.

71.    15 U.S.C. §§ 1692d, d(1) provide:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general

application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

15 U.S.C. §§ 1692d, d(1).

72. Defendant violated 15 U.S.C. §§ 1692d, d(1).

73. 15 U.S.C. §§ 1692c(a), c(a)(1) provide:

(a) Communication with the consumer generally Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
(1) at any . . . place known or which should be known to be inconvenient to the consumer. . . .

74. Defendant violated 15 U.S.C. § 1692c(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment in his favor on Count I and to award him actual and statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA.

## COUNT II
## INDIVIDUAL CLAIM

75. Plaintiff incorporates paragraphs 1- 56 herein

76. Plaintiff brings Count II individually against Defendant.

77. Defendant concealed the fact from Plaintiff that under the March 23, 2020 Michigan Supreme Court Administrate Order No. 2020-3, he did not need to

file a responsive pleading to the state court complaint within 21-days after being personally served with the summons and complaint.

78.    Nothing prohibited Defendant from crossing out the erroneous 21 DAYS language on the summons and informing Plaintiff of his rights under the March 23, 2020 Michigan Supreme Court Administrative Order No. 2020-3.

79.    Nothing prohibited Defendant from later informing Plaintiff via mail of any subsequent Orders that pertained to a date in which the clock to answer or otherwise plead in response to the complaint would start.

80.    Plaintiff relied upon the Summons and filed a *pro se* answer within the 21-day time period as directed in the Summons as he was served in person.

81.    An unsophisticated consumer who is served with summons, indicating that they have 21-days if served in person, or 28-days if served by mail, well might think that they must answer or otherwise plead within 21-days if served in person or 28-days if served by mail or otherwise a judgment may be entered against them for all of the relief requested in the complaint.

82.    Defendant's false statement is not trivial, since it could suggest to an unsophisticated consumer that any right they might have to challenge the demand for payment would be extinguished and a judgment entered against them if they did not answer or otherwise plead within the 21 or 28-day time period dictated by how the summons and complaint were served.

83. Defendant's false statement deprived Plaintiff of additional time, being able to exercise his right of delay provided under the "Stay Home, Stay Safe" Executive Order from responding to the state court complaint and having the potential of having a judgment entered against them and being garnished; answering the state court complaint within 21-days as stated on the summons has expedited the resolution of the state court litigation.

84. Plaintiff has suffered an informational injury, which is substantive in nature.

85. 15 U.S.C. §§ 1692e, e(2)(A) provide:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—
(A) the . . . legal status of any debt . . .

86. Defendant violated §§ 1692e, e(2)(A).

87. M.C.L. §§ 445.252, 445.252(f)(i), 445.252(f)(ii) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * (f) Misrepresenting in a communication with a debtor 1 or more of the following: (i) The legal status of a legal action being taken . . .; (2) The legal rights of the . . . debtor."

88. Defendant violated M.C.L. §§ 445.252(f)(i), 445.252(f)(ii).

89. M.C.L. §§ 445.252, 445.252(e) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * Making an . . . untrue . . . statement . . . in a communication to collect a debt[.]"

90. Defendant violated M.C.L. § 445.252(e).

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment in his favor on Count II and to award him statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA, and statutory damages in the amount of $50, trebled if a finding of willfulness in made, along with reasonable attorney's fees and costs as permissible under the MRCPA.

## COUNT III
## CLASS CLAIM

91. Plaintiff incorporates paragraphs 1-56 herein

92. Plaintiff brings Count III against Defendant in a representative capacity only on behalf of similarly situated individuals, if a named class representative is necessary.

93. Defendant concealed the fact from persons similarly situated to Plaintiff that under the March 23, 2020 Michigan Supreme Court Administrative Order No. 2020-3, they did not need to file a responsive pleading to the state court complaint within 21-days after being personally served with the summons and complaint, or 28 days if served by mail.

94. Nothing prohibited Defendant from crossing out the erroneous 21 DAYS, 28-day language on the summons and informing persons similarly situated to Plaintiff of their rights under the March 23, 2020 Michigan Supreme Court Administrative Order No. 2020-3.

95. Nothing prohibited Defendant from later informing persons similarly situated to Plaintiff via mail of any subsequent Orders that pertained to a date in which the clock to answer or otherwise plead in response to the complaint would start.

96. An unsophisticated consumer who is served with the summons, indicating that they have 21-days if served in person, or 28-days if served by mail, well might think that they must answer or otherwise plead within 21-days if served in person or 28-days if served by mail or otherwise a judgment may be entered against them for all of the relief requested in the complaint.

97. Defendant's false statement is not trivial, since it could suggest to an unsophisticated consumer that any right they might have to challenge the demand for payment would be extinguished and a judgment entered against them if they did not answer or otherwise plead within the 21 or 28-day time period dictated by how the summons and complaint were served.

98. Defendant's false statement deprived persons similarly situated to Plaintiff of additional time, being able to exercise their right of delay provided under

the "Stay Home, Stay Safe" Executive Order from responding to the state court complaint and having the potential of having a judgment entered against them and being garnished; answering the state court complaint within 21 or 28 days respectively as stated on the summons or face entry the of judgment of the relief sought in the state court complaint has the effect of expediting the resolution of the state court litigation.

99.     The persons similarly situated to Plaintiff have suffered an informational injury, which is substantive in nature.

100.   15 U.S.C. §§ 1692e, e(2)(A) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
>   (A) the . . . legal status of any debt . . .

101.   Defendant violated §§ 1692e, e(2)(A).

102.   M.C.L. §§ 445.252, 445.252(f)(i), 445.252(f)(ii) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * (f) Misrepresenting in a communication with a debtor 1 or more of the following: (i) The legal status of a legal action being taken . . .; (2) The legal rights of the . . . debtor."

103.   Defendant violated M.C.L. §§ 445.252(f)(i), 445.252(f)(ii).

104.  M.C.L. §§ 445.252, 445.252(e) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * Making an . . . untrue . . . statement . . . in a communication to collect a debt[.]"

105.  Defendant violated M.C.L. § 445.252(e).

106.  The proposed class consists of: (1) All persons with a Michigan address; (2) who after March 23, 2020, and until and including June 19, 2020, were served with a Summons, SCAO Form MC 01; (3) where Leikin, Ingber & Winters, P.C., was the law firm representing the named plaintiff in the lawsuit filed against the person.

107.  On information and belief given that debt collection law firms such as Leikin, Ingber & Winters, P.C., conduct a volume business, so voluminous that it uses a form state court collection complaint, that have nothing to do with the debt's debt, *see* (Exhibit A), there are more than 40 persons that fall in the proposed class definition above.

108.  There are questions of law and fact common to each class that predominate over any questions affecting only individual class members, whether informing the debtor that they have 21 or 28 days to answer or otherwise respond to the complaint or that a judgment may be entered against them, when the statement was false, violates the FDCPA and mirror MRCPA.

109. Plaintiff, if he is necessary to represent a class, will fairly and adequately protect the interest of the proposed class in Count III, as his claim asserted in Count II is common and typical to the claims of the putative class members.

110. Plaintiff has retained Curtis C. Warner, who is counsel experienced in handling class actions brought under the Fair Debt Collection Practices Act and other consumer protection statutes.

111. A class action is an appropriate method for the fair and efficient adjudication of this controversy.

WHEREFORE, Plaintiff requests this Honorable Court to appoint Plaintiff as the class representative, if necessary, appoint Mr. Warner as counsel for the class, enter judgment in favor of persons similarly situated to Plaintiff on Count III and to award them statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA, and statutory damages in the amount of $50, trebled if a finding of willfulness in made, along with reasonable attorney's fees and costs as permissible under the MRCPA, and award Plaintiff a reasonable monetary incentive award as serving as the proposed class representative, if needed.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)                    B. Thomas Golden (P70822)

5 E. Market St.                          GOLDEN LAW OFFICES, P.C.
Suite 250                                318 E. Main St., Ste, L, P.O. Box 9
Corning, NY 14830                        Lowell, Michigan 49331
(888) 551-8685                           (616) 897-2900
cwarner@warner.legal                     btg@bthomasgolden.com