UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

VINCE NICHOLAS VAN VLECK, Individually,
VINCE NICHOLAS VAN VLECK, in a
representative capacity on behalf of similarly
situated persons,

    Plaintiff,

v.

LEIKIN, INGBER & WINTERS, P.C.,
d/b/a INGBER & WINTERS, P.C.,

    Defendant.

_____/

Case No. 20-cv-11635
Hon. Stephanie Dawkins Davis
Mag. Elizabeth A. Stafford

## DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
## ITS RULE 12(B)(1) MOTION TO DISMISS

The distinction between "procedural" and "substantive" violations of consumer protection statutes has no place in the Article III standing jurisprudence launched by *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) and applied in subsequent appellate case law. The Supreme Court's *Spokeo* decision involved an alleged "procedural" violation of the Fair Credit Reporting Act, in that the defendant was alleged to have violated its statutory duty to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, 15 U.S.C. § 1681e(b), and to have published inaccurate information about the plaintiff. *Spokeo*, 136 S.Ct. at 1545-1546. The Supreme Court's majority opinion noted that, while the plaintiff had alleged a statutory violation, "Congress cannot erase Article III's standing

requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1548-1549. In other words:

> [A] plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. [*Id.* at 1549.]

The *Spokeo* majority's analysis thus appropriately used "a bare procedural violation" as an "***example***" of a statutory violation that would not by itself satisfy Article III, because the plaintiff in that case claimed the defendant violated its duty to "follow reasonable procedures." *Id.* at 1545-1546. But there is no indication in the opinion that only plaintiffs who plead "procedural" violations have this added burden of pleading a concrete injury while those who plead "substantive" violations do not and can rest on the violation alone. Rather, Article III categorically "requires a concrete injury," whatever the nature of the statutory violation. *Id.* at 1549.

Indeed, the misconceived distinction between "procedural" and "substantive" violations was debunked by the Seventh Circuit earlier this year, which noted that *Spokeo*'s holding "that a 'bare procedural violation' does not suffice to support an injury-in-fact made some people wonder whether there is a distinction between alleged procedural injuries and alleged substantive injuries. We [have] clarified… that no such line exists. ***Article III must be satisfied no matter what kind of***

*violation is asserted*." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021), emphasis added. *See also Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (same observation in the context of FDCPA claims). As the Eleventh Circuit carefully explained in a recent en banc decision, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929-930 (11th Cir. 2020) (en banc), citations and internal quotations omitted:

> Muransky attempts to reframe the nature of his injury by relying on a fuzzy distinction between 'substantive' and 'procedural' rights. He argues that Godiva's statutory violation deprived him of a substantive right… and that the violation of a substantive right, unlike a procedural right, automatically inflicts an injury in fact—even if it causes no harm. This, it turns out, is a dressed up version of the same argument that the Eighth Circuit accepted before *Spokeo*, but had to walk back after it: Our prior statement that 'injury in fact may thus be shown solely by the invasion of a legal right that Congress created,' is no longer good law in light of the Supreme Court's subsequent holding in *Spokeo, Inc. v. Robins* [that] Article III standing requires a concrete injury even in the context of a statutory violation.
>
> In an attempt to resuscitate that argument, Muransky contends that the holding in *Spokeo* applies only to what he calls 'procedural' statutory violations, and not to what he calls 'substantive' ones. He argues that *Spokeo* confirms his view when it says that even a procedural violation can be sufficient in some circumstances to constitute injury in fact. Muransky is absolutely right that *Spokeo* makes this point, but he's absolutely wrong that it saves his claim.
>
> *Spokeo*'s statement stands for the unremarkable proposition that, in some cases, the violation of a procedural right set out in a statute will necessarily result in the harm that Congress was trying to prevent. A prime example is the illegal deprivation of information: a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. That, the Supreme Court has already made clear, is not a 'bare' procedural

violation, or one that is 'divorced from any concrete harm'; if a statute protects against a lack of information, the denial of access to information is a concrete injury….

So while some statutory violations, by their very nature, will be coextensive with the harm that Congress was trying to prevent, labels do not control our analysis. We are not the first court to recognize that arguments grounded in a distinction between substantive and procedural rights miss the point and are 'unconvincing' because they depend entirely on the framing of the right. The question, always, is whether an injury in fact accompanies a statutory violation….

The point is that for standing purposes, no matter what label you hang on a statutory violation, it must be accompanied by a concrete injury.

The district court decisions referenced in this Court's Order for Supplemental Briefing are contrary to the circuit courts of appeal that have addressed the purported distinction between "procedural" and "substantive" violations and found that even "substantive" violations require an attendant concrete injury to establish Article III standing. Nor are any of the cases cited in the Plaintiff's Supplemental Brief instructive on this issue. *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016), contrary to the Plaintiff's suggestion, did not classify any provisions of the FDCPA as either "procedural" or "substantive." Nor did *Sheriff* or most of the Plaintiff's other cases even involve Article III standing issues, and therefore any characterization by those courts of certain rights as "substantive" is simply out of context.[1]

---

[1] Assuming arguendo this Court declines to follow the circuit courts of appeal, which have rejected the distinction between "procedural" and "substantive" in the Article III standing context, then it should find that the violations alleged in this case are procedural. As will be discussed *infra*, the Plaintiff's claim regarding the alleged

Indeed, for courts conducting a *Spokeo* analysis, the starting point is not whether the alleged violation is procedural or substantive, but rather whether the alleged injury is "tangible" or "intangible." *Spokeo*, 136 S.Ct. at 1549. "As a general matter, tangible injuries qualify as concrete" for Article III standing purposes. *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 997 (11th Cir. 2020), citing *Spokeo*, 136 S.Ct. at 1549. An intangible injury, on the other hand, only qualifies as concrete if it has "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" under the common law, or if Congress has otherwise "identified" and "elevated" the intangible harm as one that satisfies Article III.[2] *Spokeo*, 136 S.Ct. at 1549. *See also Trichell*, 964 F.3d at 997.

In *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020), the Sixth Circuit applied this *Spokeo* analysis in the context of the FDCPA, which analysis is highly instructive and ultimately dispositive of the Plaintiff's arguments in this case.

---

misrepresentation in the summons is brought under 15 U.S.C. § 1692e, which is the exact same provision that the Sixth Circuit described as "procedural" in *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 870 (6th Cir. 2020). In light of *Buchholz*, the Plaintiff's citation to *Coulter-Owens v. Time Inc.*, 695 F. Appx. 117 (6th Cir. 2017) – a case involving a completely different consumer protection statute – is inapposite. Meanwhile, the Plaintiff's other claims, alleging that the Defendant firm served papers in a state-court collection action at an inappropriate time, are even more procedure-oriented than the alleged Section 1692e violation.

[2] The Plaintiff's Supplemental Brief appears to define a "substantive" violation as a violation of any consumer protection statute that causes an intangible injury that, either because of the common law or congressional judgment, by itself qualifies as concrete. If that is the Plaintiff's position, then the parties' only disagreement about the point is semantical.

In *Buchholz*, the plaintiff alleged violations of 15 U.S.C. § 1692e, claiming that the dunning letters at issue falsely represented that an attorney was involved in the defendant's collection efforts. The question posed to the Sixth Circuit was whether the plaintiff's alleged anxiety that he would be sued was sufficiently tangible to satisfy Article III, or, if not, whether the alleged violations themselves constituted an intangible harm that somehow was sufficient to satisfy Article III. *Id.* at 861-862.

The *Buchholz* Court first noted it was dubious of the proposition that anxiety was an injury that could ever be sufficiently tangible to satisfy Article III. *Id.* at 863-865. But the Court ultimately did not decide that issue, because the plaintiff's emotional distress claim was related to a fear of future harm, which must be "certainly impending" to be cognizable as an injury in fact, if at all, and the *Buchholz* Court found the threat of litigation was not "certainly impending" at the time Mr. Buchholz filed his complaint. *Id.* at 865-866.

Here, the Plaintiff alleges that by serving process on him, the Defendant firm violated 15 U.S.C. §§ 1692d, d(1) and c(a)(1) by respectively "engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," using "criminal means to harm" him, and communicating with him at a "place known or which should be known to be inconvenient to the consumer," which violations caused him to be anxious he would catch COVID-19. But as briefed at length in connection with the Defendant's

Motion to Dismiss, the Plaintiff's anxiety is not cognizable under *Buchholz*, 946 F.3d at 865-866, because it was not "certainly impending," at the time the Plaintiff filed his complaint, that he would contract COVID-19 from his exposure to the process server weeks earlier. Consequently, the Plaintiff's alleged injury does not satisfy Article III under *Buchholz*.

The next step of the *Spokeo* analysis – whether the alleged statutory violations themselves could satisfy Article III's actual injury requirement – requires consideration of whether Congress "identified" and "elevated" the specific violations as ones that on their own could satisfy Article III or, if not, whether the violations have a "close relationship" to traditional common-law harms. *Spokeo*, 136 S.Ct. at 1549. In *Buchholz*, the Court made the following observations with regard to analyzing the former issue:

> Buchholz argues—and we do not disagree—that Congress passed the FDCPA to prevent debt collectors from engaging in abusive debt-collection practices. But even assuming MNT violated the statute by misrepresenting that an attorney had reviewed Buchholz's debts, we find ourselves… unable to identify any harm to come from that violation. Buchholz gives us no reason to believe he did not owe the debts. He does not allege, for example, that the statute of limitations has expired, that *res judicata* precludes MNT from collecting the debts, or even that MNT miscalculated the amounts he allegedly owes…. We are at a loss for how MNT's letters caused any harm, much less harm that Congress intended to prevent when it enacted the FDCPA. [*Buchholz*, 946 F.3d at 870.]

Similarly, in another post-*Spokeo* case, the Sixth Circuit in *Lyshe v Levy*, 854 F3d 855 (6th Cir. 2017) found that the plaintiff's allegation that the defendant violated 15

U.S.C. §§ 1692(c) and 1692e by making misrepresentations in a state-court collection action was an intangible harm that did not constitute an injury in fact because it was not the type of harm Congress intended to prevent when it enacted the FDCPA. *Id.* at 861-862.

Returning to the *Buchholz* decision, the Sixth Circuit noted that:

As to the second *Spokeo* factor, the common law, Buchholz comes up short again. Buchholz makes no argument that the injury he suffered is like a harm that the common law recognizes. [ . . .] Buchholz's failure to identify an analogous harm and corresponding common law cause of action—and our inability to identify one on his behalf—is another signal that his alleged harm is not cognizable. [*Buchholz*, 946 F.3d at 870 (internal quotation marks and citation omitted).]

Here, the Plaintiff's claim that he was afraid of catching COVID-19 from a process server who was serving process in accordance with state-court rules, and during a time when the Michigan Supreme Court stated that it was "in no way prohibit[ing] or restrict[ing] a litigant from commencing a proceeding whenever the litigant chooses" [AO-2020-3, attached as Exhibit A to Defendant's Reply Brief], is clearly not the type of harm that Congress had in mind when it enacted the FDCPA, nor is it akin to assault, abuse of process, trespass, or any other common-law tort. Rather, as discussed in the briefing to date, Amazon drivers were allowed to deliver non-essential packages and postal carriers were allowed to serve certified mail during the time in question, https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-20-2020.pdf, last accessed Mar. 2,

2021, and it was even possible to have alcoholic beverages delivered to one's door, https://detroit.eater.com/maps/where-to-find-beer-wine-cider-mead-carryout-curbside-pickup-delivery-metro-detroit-bars-restaurants, last accessed Mar. 5, 2021. It is safe to assume that no civil or criminal actions were initiated against any such delivery persons, and, likewise, had the Plaintiff himself opened his door to find someone delivering anything but a summons and complaint, he presumably would not have filed a lawsuit. But why should the delivery of court papers to collect a debt the Plaintiff does not dispute he owed, be treated any differently? Accordingly, the Plaintiff's statutory claims relating to having being served with process in a state-court collection action do not constitute an injury in fact under either of the two factors from *Spokeo* and *Buchholz*.

As for the Plaintiff's claim that the Defendant firm violated 15 U.S.C. § 1692e by failing to disclose that the answer date was tolled by a Michigan Supreme Court order, *Buchholz* and *Lyshe, supra* are absolutely clear that a technical violation of Section 1692e, without more, does not satisfy Article III. Just as the *Buchholz* Court found, Article III requires there to be some actual "harm to come from that violation," and "[w]e are at a loss for how [the defendant's] letters caused any harm." 946 F.3d at 870. *See also Trichell*, 964 F3d at 998-1002 (an alleged misrepresentation in violation of the FDCPA, without any attendant actual harm, is not a concrete injury for standing purposes). At most, the Plaintiff's claim regarding

the answer date is a violation of a state-court procedure that the *Lyshe* Court explained is not a cognizable injury in fact. *See Lyshe*, 854 F3d at 861-862.

As the Sixth Circuit stated in *Buchholz*: "Congress cannot confer standing on a plaintiff – and thus open the door to federal court – when the plaintiff has not sustained an injury in fact; Article III's standing requirements still apply." *Buchholz*, 946 F.3d at 862. Because the Plaintiff cannot satisfy Article III's standing requirements, his claims should be dismissed.

WHEREFORE, there being no just cause otherwise, the Defendant respectfully asks the Court to dismiss this case for lack of subject matter jurisdiction.

                                                       MADDIN HAUSER ROTH & HELLER PC

                                                       By: */s/ Kathleen H. Klaus* (P67207)
                                                       Kathleen H. Klaus (P67207)
                                                       Jesse L. Roth (P78814)
                                                       28400 Northwestern Highway
                                                       2nd Floor – Essex Centre
                                                       Southfield, MI 48034
                                                       (248) 359-7520
                                                       kklaus@maddinhauser.com
Dated: March 8, 2021                    Attorneys for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

        */s/ Kathleen H. Klaus*
Kathleen H. Klaus
Maddin, Hauser, Roth & Heller
Attorneys for Defendant
28400 Northwestern Highway
2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
Attorney Bar No. P67207

DATED: March 8, 2021