UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCE NICOLAS VAN VLECK,                    Case No. 20-11635

     Plaintiff,                                  Stephanie Dawkins Davis
v.                                          United States District Judge

LEIKIN, INGBER & WINTERS, P.C.,

     Defendant.

_____ /

**OPINION AND ORDER GRANTING MOTION TO
DISMISS (ECF No. 26) AND TERMINATING ALL
PENDING MOTIONS AS MOOT (ECF Nos. 9, 38, 43)**

## I.   PROCEDURAL HISTORY

Plaintiff, Vince Nicolas Van Vleck, filed this lawsuit against the law firm of

Leikin, Inger & Winters, PC on June 22, 2020.  (ECF No. 1).  Van Vleck asserts

violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*

(FDCPA) arising from defendant's in-person service of process on Van Vleck

while the Michigan Governor's declaration of emergency and stay-at-home orders

were in place due to the COVID-19 pandemic.  Defendant has filed a motion to

dismiss the complaint, arguing that Van Vleck has failed to sufficiently allege

Article III standing to assert his claims under the FDCPA.  (ECF No. 26).  That

motion is fully briefed, and the Court held a video hearing on the motion on March

17, 2021, pursuant to notice.  (ECF Nos. 28, 32, 42).

1

For the reasons set forth below, the court concludes that Van Vleck has not sufficiently alleged Article III standing to assert his claims under the FDCPA and accordingly, his complaint is **DISMISSED**.

## II.   FACTUAL BACKGROUND

On April 23, 2020, Van Vleck was personally served with a suit filed by Ingber to collect a debt owed to Ingber's client.  (ECF 1, PageID.9, ¶ 30).  Van Vleck believed that, because of the process server's age, the process server "was at a high risk group to [sic] the effects of COVID-19" and therefore "could be a super spreader" of the COVID-19 virus.  *Id*. at ¶ 43, PageID.11.  Van Vleck cried after being served because he was afraid he had caught COVID-19 and would give it to his family.  *Id*. at ¶ 46, PageID.12.  He also spoke to his doctor about his contact with the process server.  *Id*. at ¶ 47, PageID.12.

The summons served on Van Vleck was the SCAO[1] form that is pre-printed to indicate that a defendant has 21 days after personal service to answer the complaint.  (ECF 1-1, PageID.27).  The SCAO form did not disclose that, on March 23, 2020, the Michigan Supreme Court suspended the need to a respond to a complaint during the period of the COVID-19 state of emergency.  (ECF No. 1, ¶ 24, PageID.6; Mich. Sup. Ct. Adm. Order 2020-03).  Van Vleck contends that

---

[1] "SCAO" is an acronym for the State Court Administrative Office, which is the administrative agency of the Michigan Supreme Court. https://courts.michigan.gov/administration/scao/pages/default.aspx (last accessed 3/22/21).

defendant's actions violated the FDCPA and Michigan's Regulation of Collection Practices Act (RCPA) as it relates to him because serving process during the period in which the State of Michigan was under various orders restricting public gatherings was "harassment," under §§ 1692c and 1692d.  He also alleges that the use of the SCAO form violated the rights of a class of people because the representation in the SCAO summons that the plaintiff had 21 days to answer the complaint in the Collection Case was false or misleading, in violation of § 1692e.

## III.   DISCUSSION

### A.   Standard of Review

A challenge to a party's Article III standing invokes a federal court's subject matter jurisdiction and is properly raised by a motion made under Federal Rule of Civil Procedure 12(b)(1).  *In re Blasingame*, 585 B.R. 850, 858 (B.A.P. 6th Cir. 2018), aff'd, 920 F.3d 384 (6th Cir. 2019) (citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 Fed. Appx. 409, 410-11 (6th Cir. 2013) (unpublished) (citations omitted); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)).  As explained in *McQueary v. Colvin*, 2017 WL 63034, at *3 (W.D. Ky. Jan. 5, 2017), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

1994)).  "A facial attack is a challenge to the sufficiency of the pleading itself.  On

such a motion, the court must take the material allegations of the petition as true

and construed in the light most favorable to the nonmoving party." *McQueary*, at

*3 (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d at 759 ("A

facial attack goes to the question of whether the plaintiff has alleged a basis for

subject matter jurisdiction, and the Court takes the allegations of the complaint as

true for purposes of the Rule 12(b)(1) analysis").  "A factual attack, on the other

hand, is not a challenge to the sufficiency of the pleading's allegations, but a

challenge to the factual existence of subject matter jurisdiction." *McQueary*, at *3

(quoting *Ritchie*, 15 F.3d at 598).  And, where a plaintiff relies on evidence outside

the complaint to support a standing claim, the challenge is factual, and the Court

instead must assess the factual basis for jurisdiction by weighing the evidence

tendered.  *Forgy v. Stumbo*, 378 F. Supp. 2d 774, 776 (E.D. Ky. 2005) (citing *DLX,

Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)); *see also Kardules v. City of

Columbus*, 95 F.3d 1335, 1347 n. 4 (6th Cir. 1996) (The Sixth Circuit has

recognized a district court's authority to consider extrinsic evidence when

addressing the issue of standing.).  Here, defendant makes a facial attack, asserting

that Van Vleck's complaint fails to identify a sufficiently concrete harm, as

required by Article III, except as to the assertion that Van Vleck fails to show his

injury is akin to battery, where defendant relies on evidence outside the complaint.

B.   Standing

Article III of the Constitution empowers the federal judiciary to decide "Cases" and "Controversies," U.S. CONST. art. III, § 2, "a limitation long understood to confine the federal courts to concrete disputes presented in a form historically recognized as appropriate for judicial resolution in the Anglo-American legal tradition." *Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  To invoke the jurisdiction of a federal court, a plaintiff must demonstrate that he has standing to sue, a requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). *Spokeo*, 136 S. Ct. at 1547.  To establish standing, a plaintiff has the burden to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Id*.  At the pleading stage, the standing inquiry asks whether the complaint "clearly ... allege[s] facts demonstrating each element" of the standing inquiry. *Id*. (quotation marks omitted).

As discussed below, the primary dispute before the court is whether Van Vleck suffered an injury in fact.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*.

5

at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The key question here is whether Van Vleck has alleged an injury that is "both concrete and particularized."  *Id*.

As the *Larkin* court explains, particularization is generally easy to understand.  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  *Id*. (quoting *Lujan*, 504 U.S. at 560 n.1).  The claimed injury cannot be a generalized grievance shared by all members of the public.  *DaimlerChrysler Corp*., 547 U.S. at 342-44.  Rather, the plaintiff himself must have personally suffered an actual injury or an imminent threat of injury.  *Id*.; *see also* *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020) (affirming a dismissal for lack of standing because the plaintiffs themselves had no stake in the lawsuit).  On the other hand, concreteness is more challenging.  "A concrete injury must be de facto; that is, it must actually exist."  *Larkin*, 982 F.3d at 1064 (quoting *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted)).  That is, a concrete injury is one that is "real, ... not abstract."  *Id*. (quotation marks omitted).  But "concrete" does not necessarily mean "tangible."  Both tangible and intangible harms can satisfy the concreteness requirement, although tangible injuries—e.g., physical harms and monetary losses—are "easier to recognize."  *Id*. at 1549.

*Larkin* further explains that intangible harms often raise more difficult injury-in-fact questions.  In the context of suits seeking relief for statutory

violations, "both history and the judgment of Congress play important roles" in the analysis.  *Id*. (citation omitted).  Congress may identify and elevate historically non-cognizable intangible harms to the status of cognizable injuries, and when it does so, "its judgment is ... instructive and important."  *Id*.  But congressional judgment is not conclusive.  Instead, as the Supreme Court emphasized in *Spokeo*, a congressional decision to create a cause of action "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id*.  Because Congress cannot override the case-or-controversy requirement, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id*.  With these principles in mind, the court will evaluate Van Vleck's contention that he has alleged a sufficiently concrete injury and thus has standing to assert the claims in this lawsuit.

1.   *Count I – 15 U.S.C. §§ 1692d(1) and 1692c(a)(1)*

Van Vleck alleges the personal service of a summons and complaint in a debt collection matter was not necessary to sustain or protect life or to conduct minimum basic operations under the Governor's EO.  Accordingly, Van Vleck maintains that defendant violated the EO by effectuating personal service on Van Vleck.  Van Vleck likens such conduct to abuse of process and common law

battery.[2]  Van Vleck alleges that defendant's conduct violated the FDCPA's prohibition on using or threatening to use violence or other criminal means to harm the physical person, reputation or property of another person.  15 U.S.C. § 1692d(1).  Van Vleck also contends that such service violated the FDCPA's prohibition on communicating with a consumer at a place known or which should be known as inconvenient to the consumer.  15 U.S.C. § 1692c(a)(1).

In its motion to dismiss, defendant contends that Van Vleck's fear of contracting COVID-19 is not a sufficiently concrete injury such that he has standing to assert this claim.  Defendant relies primarily on *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020) in support of its argument.  In *Buchholz*, the plaintiff alleged that he suffered emotional distress when he received debt collection letters that misled him into fearing he would be sued if he did not promptly pay the debt.  *Id*. at 859.  The trial court dismissed Buchholz's complaint, holding that he lacked standing to sue based on these alleged injuries.  *Id*.  On appeal, Buchholz argued that his emotional distress and fear of litigation was a harm that was sufficiently concrete to justify his standing in federal court.  *Id*. at 863.  The Court found this argument dubious, noting the rule that "general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for

---

[2] Van Vleck also mentions the common law tort of trespass in his response to the motion to dismiss.  This theory, however, is not mentioned in the complaint and accordingly, will not be addressed further.

standing purposes." *Id*. at 861, 864-865 (citing *Humane Society of United States v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995) and *Hein v. Freedom From Religion Found.*, *Inc.*, 551 U.S. 587, 619-620 (2007)).  The Court did not reach the issue, however, because Buchholz's emotional distress claim related to a fear of future harm, "an 'injury' that is rarely cognizable." *Id*. at 865.  The Court explained that, in order for a future-oriented fear to be sufficiently "concrete" to confer standing, "it is not enough that the future injury is reasonably likely to occur – the 'threatened injury must be certainly impending.'" *Id*. (citations omitted).  The Court concluded that Buchholz lacked standing because the threat of litigation was not "certainly impending" at the time he filed his FDCPA complaint.  Based on *Buchholz*, defendant argues that Van Vleck's claim is not based on a "certainly impending" harm, but instead, is based on a speculative fear of contracting COVID-19.  Van Vleck does not allege that the process server had COVID-19 so defendant argues that any chance of contracting COVID-19 from the brief outdoor encounter was extremely remote.

In response, Van Vleck argues that his FDCPA claims in Count I are akin to the common law torts of battery and abuse of process because process was served at a time when all persons in Michigan were subject to the Governor's order to stay at home and a willful violation of that order was a misdemeanor.  Van Vleck asserts that under the EO, he had an absolute right to be "free from the criminal

approach of a process server to serve a debt collection lawsuit." (ECF No. 28, PageID.543). Van Vleck also argues that *Buchholz* is not applicable because his claim does not hinge on a fear of a potential risk of harm. Van Vleck maintains that even if *Buchholz* were applicable, he still has Article III standing because his emotional response was caused directly by the in-person service of process. Van Vleck argues that the EO had the force of law and defendant knew or should have known that it was inconvenient to communicate with Van Vleck in person during a pandemic. Van Vleck also points out that *Buchholz* expressly declined to decide whether a bare anxiety allegation failed to satisfy the injury-in-fact requirement. The concurring opinion stated that Justice Thomas' concurrence in *Spokeo*, "suggests that mental harms arising from the violation of only personal rights create Article III cases." *Buchholz*, at 872 (Murphy, J., concurring) (citing *Spokeo*, 136 S. Ct. at 1550-53) (Thomas, J., concurring), and noted that, "courts have allowed recoveries for mental anxiety alone when caused by an attempted battery." *Id*. at 873-74 (citations omitted).

A plaintiff is the master of his complaint and likewise, controls his own theories of standing. Here, Van Vleck is not primarily relying on anxiety created by the fear of contracting COVID-19 as his injury-in-fact as to his claims under § 1692(d)(1). Rather, the claimed basis for establishing injury-in-fact is that the service of process here was akin to the common law torts of abuse of process and

battery.  The Eleventh Circuit Court of Appeals ably describes how a plaintiff can attempt to show a direct harm in this way.  To succeed on this theory, he needs to show that the violation bears "a 'close relationship' to a traditionally redressable harm."  *Muransky v. Godiva Chocolatier*, *Inc.,* 979 F.3d 917, 931 (11th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549) (citation omitted).  *Muransky* cautions against overcomplicating the simple instruction that a court must examine whether a new harm is similar to an old harm.  *Id*. at 931.  In *Muransky*, the plaintiff sought to establish injury-in-fact by comparing the defendant's violation of FACTA (Fair and Accurate Credit Transactions Act) to the common law tort of breach of confidence.  The defendant violated FACTA by disclosing too many digits of the plaintiff's credit card number on his receipt.  A breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship."  *Id*. at 932.  The court rejected the plaintiff's attempt to draw a parallel between the FACTA violation and the common law breach of confidence tort, stating that there was no disclosure to a third party alleged by the plaintiff, and the plaintiff failed to allege any type of confidential relationship between himself and the store who issued the receipt. Under such circumstances, the court concluded that there was no "close relationship" between the FACTA violation and the tort of breach of confidence. *Id*.  The court acknowledged that the "fit" between a traditionally understood harm

and a more recent statutory cause of action "need not be perfect," but the association in *Muransky* was found to be "strained," at best.  Accordingly, the court concluded that the plaintiff did not plead an injury that "has been traditionally regarded as providing a basis for a lawsuit."  *Id*. (quoting *Spokeo*, 136 S.Ct. at 1549).

Here, as explained above, Van Vleck likens his injury-in-fact to battery and abuse of process.  Each of these common law torts will be examined in turn.  In *Jordan v. National City Bank*, 2014 WL 1233718 (Mich. App. Mar. 25, 2014), the court identified the following elements that must be pleaded for an abuse of process claim:  "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." (Quoting *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981)).  Although not well-elucidated in Van Vleck's response to the motion to dismiss, he does suggest in the complaint that the personal service was effectuated for the purpose of depriving him and the putative class members of their right to delay responding to the summons and complaint under the EO, in order to prompt a response from the recipient in regard to the debt.  (ECF No. 1, ¶ 56).  This is so because the summons served on Van Vleck was the SCAO form that is pre-printed to indicate that a defendant has 21 days after personal service to answer the complaint.  (ECF 1-1, PageID.27).  The SCAO

form did not disclose that, on March 23, 2020, the Michigan Supreme Court suspended the need to a respond to a complaint during the period of the COVID-19 state of emergency.  (ECF No. 1, at ¶ 24, PageID.6; MSC AO 2020-03).  Yet, the court is not convinced that a reasonable inference may be drawn from defendant's failure to inform Van Vleck of the extension of time that its ulterior purpose was to deprive him and others of their right to delay.

Regardless of defendant's intent in failing to inform Van Vleck of the extended time in which he had to answer the complaint, the complaint does not sufficiently allege any impropriety in the service of process.  While the Governor's EO generally required Michigan citizens to "stay at home," it allowed workers to leave their homes as necessary to work to sustain or protect life or to "conduct minimum basic operations."  That initiating and serving lawsuits falls within the confines of "minimum basic operations" is made clear by the Michigan Supreme Court Administrative Order 2020-3, which extended all deadlines pertaining to case initiation and the filing of initial responsive pleadings in all civil and probate matters during the pendency of the state of emergency declared by the Governor, but which also expressly indicated that litigants were free to pursue litigation:

> This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, <u>nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding</u>. Courts must have a system in place to allow filings without face-to-face contact to ensure that routine

> matters, such as filing of estates in probate court and
> appointment of a personal representative in a decedent's
> estate, may occur without unnecessary delay and be
> disposed via electronic or other means.

*See* Michigan Supreme Court AO 2020-3,

https://courts.michigan.gov/Courts/MichiganSupremeCourt/rules/court-rules-

admin-matters/Administrative%20Orders/2020-08_2020-05-

01_FormattedOrder_AmendtAO2020-3.pdf (last accessed 3/16/21) (emphasis in

original).[3] And, while the Michigan Supreme Court amended a number of

Michigan Court Rules during the pendency of the state of emergency, the rules

regarding service of process were not among them.

https://courts.michigan.gov/Courts/MichiganSupremeCourt/rules/Documents/Adm

inistrative%20Orders.pdf (last accessed 3/16/21).  Indeed, the Michigan Supreme

Court must have contemplated that service of process would continue as allowed

by Mich. Ct. Rule 2.105, or it would not have extended the time for litigants to

answer complaints.  Given that in-person service of process is one of two options

permitted under Rule 2.105 for individuals, had the Court intended to preclude

such service, much like it did with restricting in-person court activity, it would

have expressly indicated as much or modified the court rule, as it so modified other

---

[3] The Governor's Executive Order 2020-58 essentially mirrors the Michigan Supreme
Court AO 2020-3.  *See* https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-526795-
-,00.html  (last accessed 3/31/21).

court rules to address the pandemic.  Notably, the AO focuses on reducing face-to-face contact for court proceedings, and does not indicate that in-person service of process falls within its scope.  The complaint here does not allege an impropriety in the service of process, as required by the tort of abuse of process.  Accordingly, the court finds that the complaint here fails to allege a sufficiently close relationship between the alleged violation of the FCDPA and the common law tort of abuse of process.

     The court reaches the same conclusion for Van Vleck's battery theory.  Under Michigan law, the elements of assault and battery are as follows:

> An assault is "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App 110, 119; 472 NW2d 16 (1991).  This Court defined battery as "the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Id*. [*Smith v. Stolberg*, 231 Mich. App 256, 260; 586 NW2d 103 (1998).]

*Burrell v. Cty. of Macomb*, No. 295637, 2011 WL 1879622, at *2 (Mich. Ct. App. May 17, 2011).  Van Vleck does not allege that the process server engaged in conduct akin to an assault.  Rather, he claims that the service of process bears a close relationship to a battery.  But, he offers little analysis regarding this claim nor any authority suggesting that the conduct of the process server would constitute a

"battery" under Michigan law, or even something akin to it.  *See McPherson v.*

*Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.  It is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to ... put flesh on its bones.") (quoting

*Citizens Awareness Network*, *Inc. v. United States Nuclear Regulatory Comm'n*, 59

F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)); *see also Emerson v. Novartis*

*Pharm. Corp.*, 446 Fed. Appx. 733, 736 (6th Cir. 2011) (quoting *United States v.*

*Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("'Judges are not like pigs,

hunting for truffles' that might be buried in the record.").  Notably, while not a

perfect analogy, defendant raises the point that postal carriers and Amazon drivers

were neither precluded from nor arrested for delivering non-essential packages and

certified mail.  *See* https://about.usps.com/newsroom/service-alerts/pdf/usps-

continuity-of-operations-03-20-2020.pdf (last accessed 3/22/21).  This further

buttresses the court's conclusion that Van Vleck has not come forward with any

authority suggesting that in-person service of process during the pendency of the

state of emergency and the stay-at-home orders is conduct akin to a common law

battery.  Accordingly,  the court finds that the complaint here fails to allege a

sufficiently close relationship between the alleged violation of the FCDPA and the

common law tort of battery.

Next, Van Vleck alleges that the in-person service of process violated § 1692c(a)(1), which bans debt collectors from communicating with "the consumer" at "any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer."  According to this provision, a debt collector may presume that "the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location."  15 U.S.C. § 1692c(a)(1).  Van Vleck does not allege that service of process occurred outside the hours specified in the statute. Moreover, Van Vleck has not offered any authority for the proposition that service of process at one's home falls within the prohibitions of this statutory provision. He seems to suggest that any in-person service of process during the Governor's state of emergency was prohibited and thus, must be "inconvenient."  Yet, as explained above, in-person service of process was not expressly barred during the state of emergency and while the Governor's stay-at-home order was in effect. While the statute speaks of inconvenience in terms of time of day and/or place, it is unclear whether in-person service of process during what can only be characterized as a once-in-a-lifetime pandemic falls within the parameters of "inconvenient" as that term is used in the statute.  In any event, the court need not reach a conclusion on this question as it has little bearing on the more salient consideration – whether Van Vleck has sufficiently alleged an injury-in-fact to support his claim of

standing.  Unlike Van Vleck's claims under § 1692d(1), the alleged injury-in-fact

for this claim under § 1692c(a)(1) is based on his fear of contracting COVID-19.

This issue is controlled by *Buchholz*, where the Sixth Circuit concluded the claim

at issue related to a fear of future harm, "an 'injury' that is rarely cognizable."  *Id*.

at 865.  The Court explained that, in order for a future-oriented fear to be

sufficiently "concrete" to confer standing, "it is not enough that the future injury is

reasonably likely to occur – the 'threatened injury must be certainly impending.'"

*Id*. (citations omitted).  The Court found that Buchholz lacked standing because the

alleged harm – the threat of litigation – was not "certainly impending" at the time

he filed his FDCPA complaint.  Here, Van Vleck's claim is also not based on a

"certainly impending" harm, but instead, is based on a *speculative* fear of

contracting COVID-19.  Van Vleck does not allege that the process server had

COVID-19 and the court concludes that the fear of contracting COVID-19 from a

brief outdoor encounter is an alleged injury that is far too speculative to support

standing.  Accordingly, the court finds that Van Vleck has not alleged an injury-in-

fact sufficient to support Article III standing for this claim.

> 2.    *Count II – 15 U.S.C. § 1692e(2)(A)*

Section 1692e of the FDCPA prohibits debt collectors from making "false,

deceptive, or misleading communications in connection with the collection of any

debt." 15 U.S.C. § 1692e.  This provision provides a non-exhaustive list of

violations, including prohibiting a false representation of "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  To violate § 1692e, a statement must be "materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer."  *McNamee v. Nationstar Mortg. LLC*, 2021 WL 201189, at *5 (S.D. Ohio Jan. 20, 2021) (quoting *Newton v. Portfolio Recovery Assocs., LLC*, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014)).  To fall within the ambit of the FDCPA, a communication regarding debt collection must also have the "animating purpose" of inducing payment by the debtor.  *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).  While defendant did not move to dismiss the complaint pursuant to Rule 12(b)(6), the court notes that it is difficult to see how a summons and complaint, even with an incorrect deadline, constitutes a false representation regarding the "character, amount, or legal status of any debt."

Moving on to standing, defendant argues that Van Vleck's mistaken belief that he had only 21 days to answer the complaint is not a concrete injury. Defendant argues that under *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017), Van Vleck cannot establish a concrete harm.  The plaintiff in *Lyshe* received discovery in a state court case from the defendant debt-collector that misrepresented the terms under which the discovery had to be answered.  The *Lyshe* court found that

misrepresentations concerning state court procedures "was not the type of harm the FDCPA was designed to prevent" and, even if it were, the plaintiff did not allege that he acted on the misinformation. *Id*. Similarly, to the extent Van Vleck was misled regarding the deadline to answer the complaint, such a misstatement regarding the deadline does not appear to be the kind of harm that the FDCPA was designed to prevent.

Plaintiff relies on *Adams v. Seterus*, *Inc*., 2019 WL 4735157, at *3 (E.D. Mich. Sept. 27, 2019) as a counter to *Lyshe*. There, the plaintiff alleged that the defendant's misrepresentations that they would lose their home could "induc[e] homeowners into inaction or delay in asserting possible defenses, such that they may wrongfully lose their homes as a result." *Id*. (citing *Martin v. Trott Law, P.C*., 265 F.Supp.3d 731, 747 (E.D. Mich. 2017) (deceptive communications could lead a plaintiff to "make decisions detrimental to his personal financial position or legal rights that he otherwise would [not] make, if he were fully and accurately informed"). Van Vleck says that because of the incorrect 21-day deadline, he took actions inconsistent with the extension provided by the Administrative Order. Specifically, he filed an answer in state court, hired an attorney, and borrowed money to pay a discounted settlement to resolve the matter so he would not have to go to court. (ECF No. 1, ¶¶ 49-53). In the court's view, Van Vleck has not alleged that he took any *detrimental actions* in reliance on the representation regarding the

answer deadline.  The steps that Van Vleck took because of the misstated 21-day deadline are not indicative of an injury.  He would have been required to answer the complaint at some point regardless of the misstated deadline, and filing an answer is not "detrimental to his personal financial position or legal rights."  *See Martin*, *supra*.

The remaining steps taken by Van Vleck – hiring a lawyer and resolving the matter with the advice of counsel – are not injuries caused by the misstatement. Van Vleck does not dispute that he owed the debt and taking actions to resolve an undisputed debt are quite unlike the circumstances in *Adams*, where the plaintiffs alleged that their reliance on the defendant's misrepresentations caused them to take actions that could lead to losing their homes.  Here, Van Vleck chose to hire a lawyer and take his advice to resolve the debt, a decision that did not result from the 21-day misstatement.  A decision to hire a lawyer is not detrimental reliance. Were this so, hiring a lawyer to defend against any summons and complaint that contained any misstatement of fact could support a misrepresentation claim, a proposition for which Van Vleck offers no authority.  Further, to the extent that Van Vleck asserts harm from addressing the debt, choosing to resolve the debt is precisely the type of "self-inflicted" injury that will not support standing.  As explained in *Buchholz*, at the pleading stage, the plaintiff's burden of "alleging that their injury is 'fairly traceable'" to the defendant's challenged conduct is

"relatively modest[.]"  *Id*. at 866 (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)).  Thus, harms that flow "indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."  *Id*. (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)).  Yet, a plaintiff cannot meet the traceability requirement where an injury is "so completely due to the [plaintiff's] own fault as to break the causal chain."  *Id*. (quoting *Petro-Chem Processing, Inc. v. E.P.A*., 866 F.2d 433, 438 (D.C. Cir. 1989) (quoting 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3531.5, at 458 (2d ed. 1984)).  Here, the causal chain is plainly broken because Van Vleck's alleged injury – resolution of the admittedly owed debt – is the result of advice of counsel, not the 21-day misstatement.  Again, the crux of the matter is that Van Vleck has not alleged any *detrimental* reliance.  Accordingly, he has alleged no harm that is fairly traceable to defendant's conduct and does not have standing to assert this claim.

    C.   <u>Supplemental Jurisdiction</u>

    Where, as here, the court has "dismissed all claims over which  it has original jurisdiction," 28 U.S.C. § 1367(c)(3), the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state law claims.  *See e.g.*, *Brown v. Cassens Transport Co*., 546 F.3d 347, 363

(6th Cir. 2008).  Accordingly, Van Vleck's state law claims are dismissed without prejudice.

      D.    <u>Remaining Pending Motions</u>

Also pending before the court is Van Vleck's motion to certify the class action.  However, when it is determined that a plaintiff such as Van Vleck does not have an individual claim, he cannot serve as a class representative and the motion to certify the class must be denied as moot.  *Moore v. First Advantage Enterprise Screening Corp*., 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013) (citing *Chambers v. American Trans. Air*, 17 F.3d 998, 1006 (7th Cir. 1994) (District court decision to deny class certification motion as moot affirmed on appeal because "an individual bringing an action on behalf of a class must be a member of the class and 'possess the same interest and suffer the same injury' as members of the class. Having no individual cause of action, [plaintiff] cannot represent a class.") (citing *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974)); *see also Black v. Gen'l Information Solutions, LLC*, 2018 WL 1070868, *11 (N.D. Ohio Feb. 26, 2018) (same); *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 28 (6th Cir. 1987) ("*Shipp [v. Memphis Area Office, Tennessee Dep't of Emp. Sec*., 581 F.2d 1167 (6th Cir. 1978] … held, following *East Texas Motor Freight Systems, Inc. v. Rodriguez,* 431 U.S. 395 (1977), that where a prospective plaintiff class representative was found to have no meritorious claim himself, and no class had

ever been certified, dismissal of the individual claim eliminated any basis for adjudicating the class claims.").  Accordingly, the Motion to Certify the Class Action (ECF No. 9) is **DENIED** as moot, as are the Motion to Stay the Decision on Plaintiff's Motion for Class Certification (ECF No. 38) and the Renewed Motion to Consolidate Cases (ECF No. 43).

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED** without prejudice and all other pending motions are **DENIED** as moot.

**IT IS SO ORDERED**.

Date: March 31, 2021                           s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States District Judge

24